IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

YVENS FELIX,

     Petitioner,

v.                                                              CASE NO. 1:19-cv-11-AW-GRJ

SECRETARY, DEPT.
OF CORRECTIONS,

     Respondent.

_____/

## **REPORT AND RECOMMENDATION**

Petitioner initiated this case by filing a Petition for a Writ of Habeas

Corpus pursuant to 28 U.S.C. § 2254 challenging his Alachua County

convictions and 25-year total sentence for robbery, robbery with a firearm,

aggravated assault with a deadly weapon, and possession of firearm by a

convicted felon, based on his *nolo contendere* plea.  ECF No. 1.  The

Respondent has filed a response to the Petition, together with a copy of the

state-court record, and Petitioner has filed a reply.  ECF Nos. 12, 15, 16.

Upon due consideration of the Petition, the Response, the state-court

record, and Petitioner's reply, it is respectfully recommended that the

Petition be denied.[1]

_____

[1]Because the Court may resolve the Petition on the basis of the record, the Court has
determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules Governing
Habeas Corpus Petitions Under Section 2254.

# I. <u>State Court Procedural History</u>

The procedural history of Petitioner's case may be summarized as follows.  On June 13, 2016, the day Petitioner's trial was set on the armed-robbery charge, Petitioner pleaded *nolo contendere* pursuant to an "open plea" to four offenses that were charged in three separate cases.  ECF No. 12-3 at 42-47.  In the plea petition, Petitioner acknowledged that he faced a statutory maximum sentence of life imprisonment.  *Id.* at 43.  He also initialed the "immigration warning," affirming he understood that if he were not a United States citizen, his plea could result in detention and deportation/removal.  *Id.* at 44.

During the plea colloquy, Petitioner affirmed three times under oath that he faced a mandatory life sentence as a prison releasee reoffender (PRR), and that he wanted to resolve all of his charges before trial.  *Id.* at 65-66, 68-69, 71.  When Petitioner's counsel asked whether he was a citizen, Petitioner responded "yes, sir."  Counsel stated "[a]nd if you weren't a citizen you could be deported, but I'm not giving you citizenship advice because you are a citizen."  *Id.* at 75.

Petitioner affirmed that no one had made threats or promises to induce his open plea.  His counsel stated: "I've advised you what the sentence will be.  That'll be 25 years, 10 of which will be minimum-

mandatory.  You understand all that?"  Petitioner responded: "Yes, sir."

Counsel then stated: "And while this may not be the ideal outcome, this is –

you're seeking to avoid [a] potential life sentence.  So this is what we may

call the lesser of two evils.  You understand that?"  Petitioner again

responded: "Yes, sir."  Counsel then tendered the plea as freely and

voluntarily made.  *Id.* at 77.

The State presented the following factual basis for Petitioner's plea:

In case number 2015-CR-3143, on August 18, 2015, Petitioner used a

firearm to strike the victim and then robbed him of cash and electronics.

Petitioner was previously convicted of a felony offense and was in actual

possession of a firearm during the commission of this offense.  In case

number 2015-CF-3560, on April 6, 2015, Petitioner used forced violence

(without a weapon) to rob cash from another victim.  In case number 2015-

CR-3559, on September 14, 2015, Petitioner had a firearm and committed

an aggravated assault against a third victim.  Petitioner put the victim in a

headlock, put the gun to the victim's head, and dragged the victim into an

apartment.  *Id.* at 77-78.

The court then reviewed the plea petition with Petitioner.  Petitioner

affirmed that he initialed each paragraph after reviewing it with his lawyer,

and that he had a full understanding of the information contained in each

paragraph.  Petitioner responded "no" when asked whether he had any questions regarding the rights he was giving up by entering a plea. Petitioner agreed that although he was taking medication, the medication did not affect his ability to understand or appreciate his plea.  The court discussed that Petitioner had previously been offered a plea agreement with a 15-year sentence.  The court stated that based on Petitioner's criminal history, "it is very improbable and unlikely that I would have accepted that plea."  Petitioner agreed with the court that he was in the same position that he would have been in even if he had decided to accept the earlier plea offer.  *Id.* at 78-80.

The court reiterated that Petitioner did have the option to proceeding to trial, in which case he risked a life sentence as a prison releasee reoffender.  The court explained that if Petitioner entered his open plea, he would be sentenced to 25 years, stating: "[s]o while it's couched as open, [defense counsel] invited me into the discussion and I have told you what I'm going to sentence you to.  So there's not an unknown to that; you understand that?"  Petitioner replied:  "Yes, sir." *Id.* at 81.  Petitioner affirmed that his decision to plead was made of his own free will, and that no one had forced, threatened, coerced, or promised him anything for his plea.  *Id.* The court found that the plea was knowingly, freely, and

voluntarily entered and that there was an adequate factual basis to support the plea in all three cases.  The court sentenced to Petitioner to 25 years for robbery with a firearm, with a ten-year mandatory minimum; 15 years for being a felon-in-possession, with a three-year mandatory minimum; 15 years for robbery; and five years for aggravated assault with a firearm, with a three-year mandatory minimum.  All sentences were concurrent.  *Id.* at 81-83.  Petitioner did not appeal.

Petitioner sought postconviction relief by way of several Fla. R. Crim. P. Rule 3.850 motions.  Only two motions concern the issues raised in the instant federal habeas petition.  On July 17, 2016, Petitioner filed a postconviction motion asserting, *inter alia*, that counsel was ineffective for failing to advise Petitioner of the length of the sentence he would receive. Petitioner contended that he had agreed to a 15-year negotiated plea and that counsel "withheld" unspecified information regarding the sentence to coerce Petitioner's plea.  He claimed that defense counsel, the state attorney, and the court "decided what this Defendant would agree to without asking said Defendant, and he was forced to accept the agreement as set by the defense, state, and judge."  ECF No. 12-3 at 32-33.  The postconviction court rejected this claim as "conclusively refuted by the record."  *Id.* at 40-41.  The court denied the motion on the merits.  *Id.*

Petitioner appealed, but his appeal was dismissed for failure to comply with the First DCA's orders to file a conformed copy of the order being appealed and to file a proper amended notice of appeal showing service upon the Attorney General.  ECF No. 12-5 at 2.

On May 9, 2017, Petitioner filed a Rule 3.850 motion alleging, *inter alia,* that trial counsel was ineffective for failing to advise him of the immigration consequences of his plea and that had he been fully advised he would not have entered a plea.  ECF No. 12-19 at 40-55.  The postconviction court denied the motion, noting that Petitioner stated under oath during the plea colloquy that he *was* a U.S. citizen and failed to allege otherwise in his postconviction motion.  The court further noted that Petitioner was warned during his plea that he could be deported if he were not a citizen.  The court found that Petitioner failed to sufficiently allege how counsel erred in connection with the immigration warning, and allowed Petitioner to re-file the claim.  *Id.* at 60-61.

On June 15, 2017, Petitioner amended his motion to allege that he is a "noncitizen".  Petitioner claimed that counsel knew he was born in Haiti and had a duty to warn Petitioner that his conviction for aggravated assault with a deadly weapon would subject him to automatic deportation. Petitioner asserted that he testified during the plea colloquy that he thought

he was a citizen because "he thought that his permanent resident status allowed him to be a citizen." *Id.* at 108-22. The postconviction court denied the motion, finding that Petitioner's statements under oath at the plea colloquy directly contradicted his claim, Petitioner affirmed that he understood all of the warnings contained in the plea petition, and that Petitioner nevertheless was warned that he could be deported if he were a non-citizen. On that record, the court found no error by Petitioner's counsel. The court further found that any prejudice sustained by Petitioner was due to his own lack of knowledge about his citizenship, and not to any failure to give him correct legal information. Lastly, the court concluded that Petitioner would have entered the plea even if he understood his immigration status because he was facing a potential mandatory minimum life sentence if he went to trial. *Id.* at 129-37. The First DCA affirmed the denial, *per curiam*, without a written opinion. ECF No. 12-22 at 2.

Petitioner's federal habeas corpus petition asserts two claims: (1) the trial court and defense counsel failed to admonish him regarding the immigration consequences of his plea; and (2) his counsel was ineffective for failing to correctly advise Petitioner of his maximum potential sentence. ECF No. 1. The Respondent states that the claims in the Petition are exhausted and the Petition is timely. ECF No. 15 at 14. For the following

reasons, the undersigned concludes that Petitioner failed to exhaust his second claim, but in any event both claims are due to be denied on the merits.

## II.  Section 2254 Exhaustion Requirement

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion.  28 U.S.C. § 2254(b)(1), (c).  Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999).  Federal habeas

courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered.  *Id*.  at 1302, 1306.  A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010).  To state a credible claim of actual innocence, a petitioner must present new reliable evidence that was not presented at trial showing that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Here, Petitioner failed to exhaust his second claim alleging that counsel was ineffective for allegedly failing to correctly advise Petitioner of the maximum sentence he faced.  Petitioner asserted this claim in his July 17, 2016, Rule 3.850 motion, and the postconviction court denied it on the merits. ECF No. 12-3 at 40-41.  Petitioner then appealed, but his appeal was dismissed for failing to comply with the First DCA's orders to file a conformed copy of the order being appealed and to file an amended notice of appeal with a certificate of service showing service on the Attorney

General.  ECF No. 12-5 at 2.  Because Petitioner never "fairly presented"

the substance of his federal habeas corpus claim to the appellate court, the

claim is unexhausted and procedurally defaulted, since he cannot return to

state court with a successive claim.  *See Bailey,* 172 F.3d at 1303; Fla. R.

Crim. P. 3.850.  Petitioner makes no showing of cause and prejudice

sufficient to overcome the procedural default, nor would the record support

a conclusion that his guilty-plea conviction amounts to a fundamental

miscarriage of justice.  This claim is therefore due to be dismissed for

failure to exhaust.  Nevertheless, in view of Petitioner's *pro se* status and

because it is clear that he is not entitled to federal habeas corpus relief on

the merits of his claim, the Court will address the merits.  *See* 28 U.S.C. §

2254(b)(2) (federal habeas petition may be denied on the merits

notwithstanding failure to exhaust state-court remedies).

### III.  Merits: Standard of Review

For claims that are properly exhausted, the Anti-Terrorism and

Effective Death Penalty Act (AEDPA) imposes limitations on the scope of

this Court's review.  Under 28 U.S.C. § 2254(d)(2), a federal court may not

grant a state prisoner's application for a writ of habeas corpus based on a

claim already adjudicated on the merits in state court unless that

adjudication "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding."  Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"  *Burt v. Titlow,* 571 U.S. 12*,* 134 S.Ct. 10, 15 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841(2010)).

    As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1); *see Burt*, 134 S.Ct. at 15 (standard for reviewing claims of legal error by state courts is "highly deferential").   This standard "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights."  *Id*.  This highly deferential standard carries special force in habeas cases asserting ineffective assistance claims: "Especially where a case involves such a common claim as ineffective assistance of counsel

under *Strickland*—a claim state courts have now adjudicated in countless criminal cases for nearly 30 years—'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'" *Id*. (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35 (1976)).

In view of the deference afforded to the state courts' adjudication of constitutional claims, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Id*. (quoting *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786–787 (2011). "'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'" *Id*. (quoting *Harrington*, 131 S.Ct. at 786). "We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Id*. (quoting *Harrington*, 131 S.Ct. at 786).

## IV. <u>Discussion</u>

### A. *Immigration Consequences and Ineffective Assistance*

Petitioner argues that he is "actually a citizen of Haiti," but that at the

time of his plea he did not understand, nor was he admonished, that his plea would subject him to deportation.  He contends that "Florida law requires the trial court to issue full unequivocal warnings" of such consequences, and that his counsel was ineffective for failing to provide the required warning.  He claims that he was prejudiced, because had he been correctly admonished he would have proceeded to trial or alternatively he would have "accepted the State's plea offer of 15 years w/10 year minimum mandatory which would have resulted in lesser sentence than the one he is currently serving."  ECF No. 1 at 5.

Florida law provides that in determining the voluntariness of a plea the trial court must determine on the record that the defendant understands certain consequences of his plea including "deportation consequences". Fla. R. Crim. P. 3.172(c)(8).  The Florida rule provides that "[i]f the defendant is *not a citizen of the United States*", he must be informed that the plea "may have the additional consequence of changing his or her immigration status, including deportation or removal from the United States. . . . This admonition should be given to all defendants in all cases, and the trial court must not require at the time of entering a plea that the defendant disclose his or her legal status in the United States."  *Id.*

To the extent that Petitioner claims the state court erred during his

plea colloquy on the basis of this rule, "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers,* 497 U.S. 7654, 780 (1990)). "Questions of state law rarely raise issues of federal constitutional significance, because 'a state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.'" *Tejada v. Dugger*, 941 F.2d 1551, 1560 (11th Cir. 1991) (quoting *Carrizales v. Wainwright*, 699 F.2d 1053, 1053–54 (11th Cir. 1983)).  Federal habeas relief will only be granted for state law errors if the alleged errors were so critical that they rendered the entire proceeding fundamentally unfair. *Id.*; *see Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988).

Further, the rule by its plain terms applies to a defendant who is "not a citizen of the United States".  During Petitioner's plea colloquy, he testified under oath that he was a citizen.  ECF No. 12-3.  His counsel nevertheless stated "if you weren't a citizen you could be deported, but I'm not giving you citizenship advice because you are a citizen."  *Id.* at 75. Petitioner also acknowledged that he had read and understood all paragraphs of his plea petition, which sets for the warning required by Rule 3.172(c)(8).  *Id.* at 78-80.  Petitioner points to nothing in the record that should have alerted the court that he was not, in fact, a citizen.  Petitioner

has failed to show any error by the trial court that would provide any basis for federal habeas relief.

As an ineffective-assistance claim, the Supreme Court has limited the circumstances under which a guilty plea or its equivalent may be attacked on collateral review. *See, e.g., Bousley v. United States*, 523 U.S. 614, 621 (1998). A voluntary and intelligent plea by a person advised by competent counsel may not be collaterally attacked, and "even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Id*. A plea is voluntary in a constitutional sense "unless induced by threats . . . misrepresentations . . . or perhaps by promises that are by their nature having no proper relationship to the prosecutor's business." *Id*. at 619 (quoting *Brady v. United States*, 397 U.S. 742, 755 (1970)). A plea is considered intelligently made if the accused is reasonably informed of the true nature of the charge. *Henderson v. Morgan*, 426 U.S. 637, 645 (1976). "A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action." *Brady*, 397 U.S. at 757 (1970).

The *Strickland* test is applicable in habeas challenges to the

voluntariness of a plea when ineffective assistance of counsel is alleged.

*Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Premo v. Moore*, 562 U.S. 115,

125 (2011). Judicial scrutiny in this context is highly deferential. *See e.g.,*

*United States v. Freixas*, 332 F.3d 1314, 1319 (11th Cir. 2003). The

decision to plead involves the making of difficult judgments, and the

requirement that a plea must be intelligently made "is not a requirement

that all advice offered by the defendant's lawyer withstand retrospective

examination in a post-conviction hearing." *McMann v. Richardson*, 397 U.S.

759, 769–70 (1970). "If a prisoner pleads guilty on the advice of counsel,

he must demonstrate that the advice was not 'within the range of

competence demanded of attorneys in criminal cases," in order to merit

collateral relief.  *McMann,* 397 U.S. at 771.  A defendant who enters a plea

may not raise claims relating to deprivation of constitutional rights occurring

before the plea but may only attack the voluntariness of the plea by

showing counsel's advice fell below the *McMann* standard. *Tollett v.*

*Henderson*, 411 U.S. 258, 267 (1973).

The U.S. Supreme Court has further explained:

A plea of guilty and the ensuing conviction comprehend all of the
factual and legal elements necessary to sustain a binding, final
judgment of guilt and a lawful sentence. Accordingly, when the
judgment of conviction upon a guilty plea has become final and the
offender seeks to reopen the proceeding, the inquiry is ordinarily
confined to whether the underlying plea was both counseled and

voluntary. If the answer is in the affirmative then the conviction and
the plea, as a general rule, foreclose the
collateral attack.

*United States v. Broce*, 488 U.S. 563, 569 (1989); *see also Mabry v.*

*Johnson*, 467 U.S. 504, 508 (1984) ("It is well settled that a voluntary and

intelligent plea of guilty made by an accused person, who has been

advised by competent counsel, may not be collaterally attacked."),

*disapproved of in part on other grounds, Puckett v. United States*, 556 U.S.

129, 138 n.1 (2009).

To satisfy the prejudice prong of *Strickland* in the context of a habeas

challenge to a conviction based on a plea, the petitioner must establish that

the deficient performance affected the outcome of the plea process and

that, but for counsel's errors, the petitioner would not have entered the plea

and would have insisted on going to trial. *Hill*, 474 U.S. at 58–59. "It is not

enough for [petitioner] to show that the errors had some conceivable effect

on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.

"[T]he representations of the defendant, his lawyer, and the

prosecutor at [the plea hearing], as well as any findings made by the judge

accepting the plea, constitute a formidable barrier in any subsequent

collateral proceedings. Solemn declarations in open court carry a strong

presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977).

When, at a plea colloquy, the presiding judge correctly advises a defendant about the consequences of pleading guilty, the judge's advice cures any contrary advice by counsel. *See, e.g., United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007) (holding that an erroneous prediction by counsel is not ineffective assistance where an adequate plea hearing was conducted and written plea agreement accurately stated the potential sentence); *United States v. Wilson*, 245 Fed.Appx. 10, 12 (11th Cir. 2007); *Gordon v. United States*, Nos. 3:12cr1265–J–34JRK, 3:10cr130–J–34JRK, 2015 WL 413102, at *10 (M. D. Fla. Jan. 30, 2015).

The Supreme Court has held that a counsel's failure to inform a non-citizen defendant of the immigration consequences of pleading guilty constitutes ineffective assistance of counsel. *Padilla v. Kentucky,* 559 U.S. 356, 130 S.Ct. 1473 (2010); *see also Lee v. United States*, ___ U.S. ___, 137 S. Ct. 1958 (2017) (counsel's erroneous advice as to deportation consequences of defendant's guilty plea prejudiced defendant where there was a reasonable probability that he would not have pleaded guilty had he been correctly advised).

In this case, the state postconviction court applied *Hill v. Lockhart* and rejected this ineffective-assistance claim on both prongs:  First, Petitioner stated under oath during his plea colloquy that he was a citizen but he

nevertheless was warned pursuant to Rule 3.172(c)(8) that he could be

deported as a result of his plea.  Petitioner also affirmed that he had gone

over the plea petition with his attorney, understood the warnings contained

therein, and had no questions.  The court concluded "[f]or these reasons,

[Petitioner] fails to show how his counsel erred by failing to provide him with

additional immigration warnings other than that which he received in the

plea petition and during the plea colloquy."

Second, the court observed that according to Petitioner's

postconviction motion he mistakenly believed he was a U.S. citizen at the

time of his plea:

> Similar to the defendant in *Johnson v. State*, Defendant, here, "did
> not inform his counsel about his citizenship. [Thus,] [h]is trial counsel
> never realized that deportation was a risk in this case." 760 So.
> 2d 992, 993 (Fla. 2d DCA 2000). Any prejudice that Defendant
> sustained in this case "relate[d] to his own lack of knowledge about
> his own citizenship, and not to a failure of the trial court to give
> him correct legal information." *Id*.

ECF No. 12-19 at 134.  The court noted that the purpose of Rule

3.172.(c)(8) is to put a defendant on notice that he should understand his

citizenship status and, if doubts exist, he should resolve them before

entering a plea.  *Id.* (citing *Jaar v. State,* 973 So. 2d 1164, 1166 (Fla. 2nd

DCA 2007); *State v. Seraphin,* 818 So.2d 485, 489 (Fla. 2002); *State v.

Rajaee*, 745 So.2d 469, 470 (Fla. 5th DCA 1999) ("A defendant is put on

notice that he should know, or if any doubt exists he should determine, his citizenship status *before* proceeding with he plea.  No case has been cited to us which indicates that a mistake not caused by the court, defense counsel, law enforcement, or someone representing the state or not based on a misunderstanding of the plea agreement, the score sheet, or some document prepared by some governmental agent is sufficient to make a plea involuntary.").  The court concluded that Petitioner would have entered a plea even if he had known of his immigration status because he faced a mandatory minimum life sentence if convicted at trial.  *Id.* at 134-35.

On this record, Petitioner has not established that the state court's rejection of this claim on both the performance and prejudice prongs of *Hill v. Lockhart* was contrary to, or an unreasonable application of, federal law. The record reveals no basis for counsel to have known that Petitioner was not, as he affirmed under oath, a United States citizen, nor does the record suggest that but for any error by counsel Petitioner would have elected to go to trial and potentially face a mandatory life sentence.

**B.  *Ineffective Assistance Concerning Maximum Sentence***

Petitioner maintains that counsel mislead him into believing he was agreeing to a negotiated plea agreement that would carry a maximum sentence of 15 years, and that he was never advised by counsel that he

was actually entering an "open plea".  This claims is squarely refuted by the

record of Petitioner's plea colloquy, as the state court found.  *See* ECF No.

12-3 at 40.  As summarized above, the state court and counsel took great

pains to make a record regarding Petitioner's potential maximum sentence

of life in prison, the fact that he had previously rejected a 15-year plea offer

(which the state court would not have accepted in any event), and the fact

that a 25-year sentence would be imposed upon acceptance of his plea.

*See* ECF No. 12-3 at 63-85.

In sum, it is apparent from the record that the trial court in Petitioner's

case conducted a thorough plea colloquy during which Petitioner was made

fully aware of the nature of the charges, the maximum sentence he faced,

and the rights he was waiving by entering a plea.  The court ensured that

the plea was supported by an adequate factual basis, and made specific

factual findings that the plea was freely, knowingly, and voluntarily entered.

The state court's findings as to the validity of plea must be presumed to be

correct, and Petitioner has "the burden of rebutting the presumption of

correctness by clear and convincing evidence."  28 U.S.C § 2254(e)(1).

Petitioner has failed to carry that burden, nor has he demonstrated that

counsel's advice to enter a plea was outside the range of competence

demanded of attorneys in criminal cases.

## V. <u>Certificate of Appealability</u>

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## VI.  Conclusion

For the foregoing reasons, it is respectfully **RECOMMENDED** that the

petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, ECF No.

1, should be **DENIED** and a COA should be **DENIED.**

**IN CHAMBERS** this 10th day of September 2021.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.